* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris. The appealing party has shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Harris and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1. The parties are properly denominated in the caption. *Page 2 
2. An employee/employer relationship as defined by N.C. Gen. Stat. § 97-2(2) existed between the parties on June 27, 2005.
3. Weyerhaeuser Company was a qualified self-insured for workers' compensation coverage on June 27, 2005.
4. Employee filed a workers' compensation claim by filing an Industrial Commission Form 18 on December 5, 2005 and identified the date of injury as June 27, 2005.
5. Employer denied employee's workers' compensation claim by filing an Industrial Commission Form 61 on December 13, 2005.
6. Employee last worked for employer on August 28, 2005.
7. Employee received complete salary continuation through October 22, 2005.
8. Employee received employer-funded short-term disability benefits in the amount of $395.50 per week from October 23, 2005 through February 24, 2006.
9. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
10. All parties are properly before the Commission for hearing, and the Commission has jurisdiction of the parties and the subject matter.
11. Pursuant to N.C. Gen. Stat. § 97-2, it is stipulated that employee is entitled to the maximum compensation rate for the year 2005 of $704.00.
 * * * * * * * * * * * EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Plaintiff's medical records *Page 3 
 • Exhibit 3: Industrial Commission forms
The following document was accepted into evidence as a Defendant's exhibit:
 • Exhibit 1: Defendant's "Medical Management Program" document
Transcripts of depositions of the following were also received post-hearing:
 • Dr. Scott Reeg
 • Ms. Laura Pakowski, FNP
 • Ms. Carlene White
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was fifty-eight (58) years old. He graduated from high school and attended college for two years receiving a certificate in radio and television repair. Plaintiff has a vocational history of working as a cook, plumber, and production worker with his most recent employment being with defendant.
2. Plaintiff began working with defendant in 1990 as a manufacturing associate in the drying department of its Greenville lumber facility. Plaintiff's duties included loading and unloading lumber into and out of kilns. Plaintiff utilized a forklift to move the wood around; however, he would have to place 4x4 pieces of lumber on each pack of lumber. Plaintiff estimated that the 4x4s weighed approximately 45 to 65 pounds. Plaintiff was a manufacturing associate, performing these job duties during the entire fifteen years he worked with defendant.
3. On or about June 27, 2005 around 1 or 2 A.M., plaintiff was working the night shift. Plaintiff was sliding 4x4 pieces of lumber from one stack to another when he felt a sharp *Page 4 
pain in his lower back, "like a bone moving." The pain was so sharp that he had to stop working until the severe pain passed. Plaintiff had to "rock and wiggle" until he could move his legs and walk away. At the time of the incident, plaintiff was working third shift and relieving another worker for lunch. Company policy is that an injured worker must immediately report an injury to his supervisor or safety person. Plaintiff was working alone and his supervisor was not present.
4. Plaintiff finished his shift at 7 A.M. and went home. Later that day, when he reported back to work, plaintiff went to defendant's safety manager, Carlene White, and reported the incident to her. Ms. White told plaintiff that she would try to have plaintiff seen for medical treatment under an old back claim plaintiff had filed several years before with defendant. Ms. White told plaintiff she was going to try to handle the matter as part of the old claim because defendants needed to avoid the reporting of a new claim, as it would affect their reward system. Employees received a year-end bonus if they maintained an accident free workplace. When plaintiff did not hear back from Ms. White, he went back to see her again the next day. Ms. White advised plaintiff that she had forgotten about it and would check into the matter. Later, Ms. White told plaintiff that she could not send him to the doctor under the old claim.
5. Although plaintiff and defendant's witnesses provided conflicting testimony as to whether plaintiff reported his injury in or about June 2005 within one day of its occurrence, the Full Commission finds plaintiff's testimony regarding the incident credible.
6. After learning that defendant would not send him to the doctor, plaintiff sought treatment for his back at the VA hospital.
7. Plaintiff had experienced problems, to one degree or another, with his low back for many years. For instance, when plaintiff went to the VA hospital for a general assessment on *Page 5 
June 28, 2004, about a year before the incident in this case, he described his back pain level as being seven out of ten. Plaintiff was in an automobile accident in 1990 and sustained a whiplash injury. In addition, he had prior back problems for which he had filed a workers' compensation claim in 1995 or 1996.
8. On July 28, 2005 and August 2, 2005, plaintiff presented to Ms. Pakowski, a VA family nurse practitioner, with complaints of "worsened" back pain and left hip pain. About one month later, Ms. Pakowski referred plaintiff to Dr. Reeg for further evaluation. At the time of this referral, plaintiff described his back pain level as being seven out of ten, the same as it had been at his June 28, 2004 visit.
9. On September 1, 2005, plaintiff presented to Dr. Reeg's office complaining that his back pain had grown "particularly worse" over the last month. Plaintiff described the pain as being in his low back and going into both hips. Plaintiff was diagnosed with degenerative disc disease of the lumbar spine with associated spondylosis (arthritis).
10. Thereafter, plaintiff underwent physical therapy, with no significant improvement, and a course of epidural steroid injections. By March 2006, Dr. Reeg considered plaintiff to be a candidate for decompression and fusion surgery. As of the date of the hearing before the deputy commissioner, plaintiff had not undergone surgery.
11. Dr. Reeg, an expert in spinal surgery, testified that moving 4x4s would be the kind of thing that could easily aggravate plaintiff's preexisting back condition. He further testified that an event, as described by plaintiff and found as fact herein, could have exacerbated a preexisting condition. Dr. Reeg also stated that he could not state to a reasonable degree of medical certainty that the incident that occurred on or about June 27, 2005 caused the back condition for which he treatment plaintiff or aggravated plaintiff's preexisting back condition. *Page 6 
12. Plaintiff testified and the undersigned find as fact that although he had prior back pain in the past, he was able to work and did not miss time at work due to his back pain. Prior to the incident on or about June 27, 2005, plaintiff had not had pain that radiated into his buttocks or into his legs. In addition, despite plaintiff's problems with his low back for many years preceding the incident on or about June 27, 2005, no physician had recommended surgery.
13. Based on review of the evidence as a whole, the Full Commission finds as fact that plaintiff suffered a specific traumatic incident on or about June 27, 2005. As a result of the specific traumatic incident, plaintiff suffered an aggravation of his preexisting back condition.
14. Plaintiff took early retirement due to his back condition and last worked for defendant on August 28, 2005.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable specific traumatic injury on or about June 27, 2005. N.C. Gen. Stat. § 97-2(6). Plaintiff must show his back injury arose in the course of the employment and the injury was the "direct result of a specific traumatic incident of the work assigned."Caskie v. R.M. Butler Co., 85 N.C. App. 266, 354 S.E.2d 242 (1987). Plaintiff may point to a series of contemporaneous events which could have caused his back injury. Richards v. Town of Valdese,92 N.C. App. 222,374 S.E.2d 116, cert. denied 324 N.C. 337, 378 S.E.2d 799 (1989). In this case, plaintiff was able to pin down exactly what he was doing when he felt a sharp pain in his lower back. *Page 7 
2. There must be proof of a causal relationship between the injury and the employment. Booker v. Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980). Medical certainty is not required from the expert. If an expert is unable to state with certainty that there is a nexus between an event and an injury, his testimony relating the two is at least some evidence of causation if there is additional evidence which establishes that the expert's testimony is more than conjecture. See Booker-Douglas v. J S Truck Serv.,Inc., 178 N.C. App. 174, 630 S.E.2d 726 (2006); Adams v. MetalsUSA, 168 N.C. App. 469, 608 S.E.2d 357, aff'd per curiam, 360 N.C. 54,619 S.E.2d 495 (2005). Here, Dr. Reeg did not testify to a reasonable degree of medical certainty; however, Dr. Reeg did testify that moving the 4x4s, as described by plaintiff, could aggravate plaintiff's preexisting back condition. The greater weight of the competent evidence of record, including the evidence that plaintiff was able to work and did not miss work due to back pain prior to June 27, 2005, that plaintiff did not suffer from pain radiating into his buttocks or legs previously, and that no physician recommended surgery for his back prior to June 27, 2005, viewed with Dr. Reeg's testimony shows that as a result of the specific traumatic incident, plaintiff suffered an aggravation of his preexisting back condition.
3. Plaintiff is entitled to temporary total disability compensation at the rate of $704.00 per week beginning August 29, 2005, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. §97-29. *Page 8 
4. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay to plaintiff compensation benefits at the rate of $704.00 per week for the period beginning on August 29, 2005, and continuing until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to plaintiff in a lump sum. The defendant is entitled to a credit for salary continuation and short-term disability benefits paid to plaintiff after June 27, 2005.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as long as the same is reasonably designed to effect a cure, provide relief or lessen the plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded in paragraph 1 of this Award is hereby approved for plaintiff's counsel. Thereafter, every fourth check shall be directed to plaintiff's counsel.
 This the 17th day of December, 2007. *Page 9 
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1